

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Jno. Q. McAdams
Commissioner
Department of Banking
Austin, Texas

Dear Sir:

Opinion No. 0-5561

Re: Permissibility under Article 6 of Chapter II of the Texas Banking Code of 1943, (H.B. 79, Acts of the Regular Session of the 48th Legislature) of employing a blanket form of bond and ascertainment of the amount of such bond.

Your request for an opinion upon the above stated question reads in part as follows:

"Article 6 of Chapter II of the 1943 Banking Code designates the oath of office 'and a fidelity bond in the sum of $10,000.00 payable to the Governor of this State or his successor in office in individual, schedule of blanket form executed by a surety' * * * for each employee of the Banking Department.

"We would like to know whether this statute would permit a blanket form bond to be substituted for the usual coverage in schedule form. . .

" If blanket form bond may be written for this department, we would like to know the amount for which such bond shoud be made."

The provision of the Banking Code cited in your letter reads as follows:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS

"The Commissioner, the Deputy Commissioner,
the Departmental Examiner, the Liquidating
Supervisor, and each examiner, assistant ex-
aminer, and special agent, the Building and
Loan Supervisor and each building and loan
examiner and each other officer and employee
specified by the Commissioner shall, before
entering upon the duties of his office, take
an oath of office and make a fidelity bond
in the sum of Ten Thousand Dollars ($10,000.00)
payable to the Governor of the State of Texas,
and his successors in office, in individual,
schedule or blanket form, executed by a surety
appearing upon the list of approved sureties
acceptable to the United States Government.
Any bond provided under this article shall be
on a form approved by the Finance Commission.
The premiums for such bonds shall be paid
out of the funds appropriated for the operation
of the Banking Department."(Emphasis added)

As can readily be seen, the statute expressly
authorizes the use of a blanket form of bond, subject--
as is the case whether the bond be individual, schedule
or blanket--to the requirement that the form of such
bond be approved by the Finance Commission created by the
new Banking Code. Your first question is therefore
answered in the affirmative.

The plain intendment of the above statute is that
a fidelity bond in the amount of $10,000 shall cover the
acts of each of the officers and employees enumerated therein
so that, in the event of the defalcation of any or all of
such persons, recovery may be had up to this amount for
each of the erring individuals. Stated differently, the
purpose of the statute is to protect the State from the
malfeasance of the persons named therein to the extent
of $10,000 for each such person, regardless of when such
malfeasance shall occur and regardless of the circumstances
under which it shall take place.

The following examples will perhaps serve to
make this clear:

(a) Either A or B or C alone embezzles $10,000 and
is immediately detected.

Honorable Jno. Q. McAdams    page 3

(b)  A, B and C, acting in concert or at the same
time, each embezzle $10,000 and are immediately
detected.

(c)  A embezzles $10,000 and his act remains
undetected; B subsequently embezzles a like amount
and he too is unapprehended; C later is guilty of
like action, but at this time all three embezzle-
ments are discovered.

In our opinion, the purpose of the statute was to
afford full and complete protection to the State in each
of the situations illustrated above, and in similar situations.

If a bond covering A, B and C should be executed
only for the sum of $10,000, each of such persons would,
in one sense, be covered by a $10,000 bond, since a recovery
of this amount could be had in the event that any one of
them should violate the conditions of the bond.  Thus full
coverage would result in the situation illustrated in (a)
above.  Moreover, if A alone should embezzle $10,000 and
if this amount should be recovered on the bond, a new bond
of $10,000 would be necessary to replace the impaired
security and such new bond would be available if B alone
or C alone should subsequently be guilty of like action.

However, it is apparent that such a bond would in
no way afford full protection in the situations illustrated
in (b) and (c), for the maximum liability of the surety of
such bond would be but $10,000 regardless of how many defal-
cations should occur and regardless of the extent thereof.
Thus, in (b) and (c) the State could recover but $10,000
despite the fact that its total losses were $30,000.

If we could assume that possible malfeasors will
act singly and in sequence, with each succeeding person
waiting until his predecessor has been apprehended and
until the impaired security has again been built up to
$10,000, a bond of this amount would conform to the purpose
of the statute.  Obviously, however, no such assumption
is tenable.  To care for situations of the type illustrated
in (b) and (c) above, and similar situations, it is necessary
that the bond be one which covers each individual to the
extent of $10,000 regardless of when he acts and regardless
of the action of his fellows.

Honorable Jno. Q. McAdams    page 4

Since we are not authorized to prescribe the form of such bond, we do not here attempt to state precisely what the amount of such bond shall be. Perhaps it will be necessary for the amount of the bond to be that amount which is obtained by multiplying $10,000 by the number of persons to be included in the bond. On the other hand, perhaps it will be possible to obtain a bond which while bearing a face amount of but $10,000 or some sum in excess thereof will nevertheless be conditioned in such a way that the necessary coverage will be obtained. Consequently, we are unable to give a categorical answer to your second question. However, in answer to such question, you are respectfully advised that the amount of the bond must be such that under the conditions thereof protection to the extent of $10,000 will in all circumstances be afforded the State against the possible misdeeds of each individual covered by the bond.

Trusting that the foregoing satisfactorily answers your inquiries, we are

APPROVED SEP 3, 1943

FIRST ASSISTANT
ATTORNEY GENERAL

Yours very truly

ATTORNEY GENERAL OF TEXAS

By  R. Dean Moorhead

R. Dean Moorhead
Assistant

RDM:ncd

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE